UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

KATHLEEN PRINCETON
and RICHARD BOJAR,

    Plaintiffs,

  v.         Case No. 25-CV-1215

AMERICAN FAMILY MUTUAL
INSURANCE COMPANY S.I.,
AMERICAN STANDARD INSURANCE
COMPANY OF WISCONSIN, and
AMERICAN FAMILY LIFE
INSURANCE COMPANY,

    Defendants.

## DECISION AND ORDER

  Kathleen Princeton and Richard Bojar, on behalf of themselves and all others similarly situated, seek to assert the right to a lifetime annuity for designated beneficiaries of a termination benefit plan. (ECF No. 1-2 at 7-8.) Relevant to this suit are the termination agreements that American Family Mutual Insurance Company SI, American Standard Insurance Company of Wisconsin, and American Family Life Insurance Company (collectively referred to as "American Family") enter into with some of their independent contractor insurance agents. (ECF No. 1-2 at 24-51.) Specifically, some agents have agreements with American Family that contain "provisions providing for termination payments" when the agent retires. (ECF No. 1

at 2.) The executed agreement here permits the assignment of "any remaining termination benefits" to a designated beneficiary upon the agent's death. (ECF No. 1-2 at 51.)

Plaintiff Princeton is the designated beneficiary of Earl W. Stone, a former American Family agent. (ECF No. 1-2 at 10.) Stone executed an agreement with American Family on January 1, 1993, which contained provisions outlining the "extended earnings" for which Stone may be eligible upon retirement. (ECF No. 1-2 at 24, 29-32.) The agreement was amended in 2013 to appoint Princeton as Stone's designated beneficiary. (ECF No. 1-2 at 51.) Following Stone's death in 2024, American Family indicated it would pay Princeton a lump sum payment of $554,535.61; American Family stated this amount was the "present day value" of Stone's remaining termination benefits. (ECF No. 1-2 at 10.) Princeton alleges that American Family breached its contract by miscalculating the amount of remaining termination benefits. (ECF No. 1-2 at 18-19.) In particular, she argues that the agreement entitles her to the "present value of the lifetime annuity it owed agent Stone at his death." (ECF No. 16 at 6.)

Seperately, Plaintiff Bojar is a retired American Family agent. (ECF No. 1-2 at 12.) American Family currently pays Bojar "monthly installments" as outlined in his own termination agreement from 1995. (ECF No. 1-2 at 12.) Although plaintiffs executed different contracts with American Family (a 1993 agreement and a 1995 agreement), they allege the two versions are materially identical. (ECF No. 1-2 at 12.) Together they seek a declaration that American Family materially breached the

2

Case 1:25-cv-01215-BBC    Filed 02/12/26    Page 2 of 13    Document 18

terms of the termination agreements. (ECF No. 1-2 at 21.) They further ask for declaratory and injunctive relief requiring American Family to calculate and pay beneficiaries the present value of the agents' lifetime annuities. (ECF No. 1-2 at 21.)

Plaintiffs originally filed their complaint in Marinette County Circuit Court. (ECF No. 1 at 1.) They alleged a breach of contract by American Family (ECF No. 1-2 at 18-19), as well as a breach of fiduciary duty (ECF No. 1-2 at 15-18) and a breach of the duty of good faith and fair dealing (ECF No. 1-2 at 19-20). American Family then removed the action to this court (ECF No. 1 at 1) and moved to dismiss the complaint for failure to state a claim (ECF No. 15 at 8). It argues that the plaintiffs' suit relies on the "faulty premise" that beneficiaries are entitled to an agent's lifetime annuity. (ECF No. 15 at 6.) That motion is ready for resolution. The court has jurisdiction pursuant to 28 U.S.C. § 1332(d) and the Class Action Fairness Act.

## I. The Agreement

The agreement at issue here provides that agents who represented American Family for at least ten years are entitled to "extended earnings" payments following their termination. (ECF No. 1-2 at 29.) Plaintiffs refer to the termination payments as a "defined benefit retirement plan." (ECF No. 1-2 at 9, 12.) American Family indicates that over 1,400 former agents receive contract termination payments. (ECF No. 1-1 at 2.)

The agreement states that if an agent dies "prior to receiving the amount of extended earnings calculated under Sec. 6.m. and n…. your legal representative will receive the present value of any unpaid difference as a lump sum." (ECF No. 1-2 at

3
Case 1:25-cv-01215-BBC   Filed 02/12/26   Page 3 of 13   Document 18

31 (Section 6.s).) Separately, an amendment to the agreement permits assignment of the termination benefits to a designated beneficiary. (*See* ECF No. 1-2 at 233 (Endorsement No. 6) ("upon [the agent's] death the Company will pay any remaining Termination Benefits to the individual(s) or trust set forth below.").)

The extended earnings amount is based on the length of time the agent represented American Family and the fees earned prior to the agent's termination. (*See* ECF No 1-2 at 29-30 (Sections 6.m and 6.n).) Plaintiffs Princeton and Bojar both fall within the payment schedule of Section 6.p, which prescribes monthly installments following termination. (ECF No. 1-2 at 30-21.) According to the applicable section of the agreement, the agent is entitled to a specific percentage amount in months 1 through 60, a lower percentage in months 61 through 120, and the same lower percentage in months "121 and thereafter for your life." (ECF No. 1-2 at 31.) American Family contends that payments past "121 [months] and thereafter for your life" are an "added benefit" to the extended earnings. (ECF No. 15 at 6.)

Therein lies the central question of the dispute—when American Family entitles the agent's designated beneficiary to "any remaining termination benefits," is that just the present value of the first 120 months of extended earnings, or does it include the potential payout due over the course of an agent's projected[1] lifetime?

---

[1] Plaintiffs use the Internal Revenue Service 2010 CM mortality table and Internal Revenue Service regulation interest rate to calculate the projected lifetime of an agent at retirement. (ECF No. 1-2 at 11.)

Defendants maintain that the contract between American Family and its agents is explicit as to "the limited circumstance" in which an agent's beneficiary receives a payment after his or her death:

> "For agents who terminate when they are over age 60, the Extended Earnings Amount is paid over 120 months, and thereafter the agent continues to receive an additional monthly payment "for your life." *Id.*, §§ 6.p., 6.q. If the agent dies before recouping the entire Extended Earnings Amount (i.e., less than 120 months after termination), then the agent's legal representative will receive the present value of the "unpaid" Extended Earnings Amount in a lump sum payment. *Id.*, § 6.s. The Agreements contain no provision that would entitle the legal representative to receive the present value of the projected lifetime income stream an agent would have received had he or she lived more than 120 months after termination."

(ECF No. 15 at 9.)

Plaintiffs, on the other hand, argue that the agreement neither guarantees nor expressly caps their assigned termination benefits to 120 months. (ECF No. 16 at 6.) They bring this suit to assert their right to an additional payout as calculated by the agent's projected lifetime at the time of termination. (ECF No. 1-2 at 22.)

## II. Motion to Dismiss Standard

On a motion to dismiss, the court focuses on whether the plaintiff stated a plausible claim for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). This is not a "high barrier"; all it requires is that the plaintiff "present a story that holds together." *Taylor v. Salvation Army Nat'l Corp.*, 110 F.4th 1017, 1028 (7th Cir. 2024). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S.

662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). The complaint must, at a minimum, "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555.

In evaluating a motion to dismiss under Rule 12(b)(6), courts must "accept the well-pleaded facts in the complaint as true"; however, "legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). Courts also "draw all reasonable inferences from these facts in favor of the plaintiff." *Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001).

### III. Analysis

#### a. Breach of Contract

The parties appear to agree that designated beneficiaries are entitled to "any remaining termination benefits" pursuant to Endorsement No. 6. (ECF No. 17 at 14; ECF No. 16 at 13.) But American Family argues that that plaintiffs cannot plausibly allege a breach of contract because the "remaining termination benefits" do not include payments made available to agents "for [their] life thereafter." (*See* ECF No. 15 at 6 ("Nowhere do the Agreements provide that a legal representative is entitled to the present value of the additional lifetime monthly payments that the agent would have received had they lived beyond the ten-year period.").) In the opposite vein, plaintiffs counter that nothing in the agreement "encodes a ten-year-certain guarantee or cap on benefits" for beneficiaries. (ECF No. 16 at 17.)

Both parties evaluate the termination agreement under Wisconsin law. To overcome a motion to dismiss, a breach of contract claim in Wisconsin must allege: (1) a valid contract exists; (2) the defendant breached the contract; and (3) damages stemmed from that breach. *Matthews v. Wis. Energy Corp.*, 534 F.3d 547, 553 (7th Cir. 2008) (citing *N.W. Motor Car, Inc. v. Pope*, 51 Wis.2d 292, 187 N.W.2d 200 (1971)). Neither party disputes the validity of the termination agreement. Thus, the court will consider whether plaintiffs' complaint plausibly alleges a breach causing damages.

In assessing the terms of a contract, the court must interpret the agreement's language "consistent with what a reasonable person would understand the words to mean under the circumstances." *Maryland Arms Ltd. P'ship v. Connell*, 2010 WI 64, ¶ 22, 326 Wis.2d 300, 786 N.W.2d 15. If the agreement unambiguously shows that American Family had no duty to perform as plaintiffs have alleged, the court should dismiss the claim. *See McWane Inc. v. Crow Chi. Indus., Inc.*, 224 F.3d 582, 584 (7th Cir. 2000); *see also MS Real Estate Holdings, LLC v. Donald P. Fox Family Tr.*, 2015 WI 49, ¶37, 362 Wis. 2d 258, 864 N.W.2d 83 ("If the terms of a contract are plain and unambiguous, the court construes it as it stands.").

Where contractual language is reasonably susceptible to more than one meaning, however, that language is ambiguous. *MS Real Estate Holdings*, 2015 WI 49, ¶37. A motion to dismiss is not appropriate if the contract is facially ambiguous. *Dawson v. General Motors Corp.*, 977 F.2d 369, 372 (7th Cir. 1992) ("If the language of an alleged contract is ambiguous regarding the parties' intent, the interpretation of the language is a question of fact which a [court] cannot properly determine on a

motion to dismiss." (quotations omitted)). "[A]mbiguities are resolved against the drafter." *Marlowe v. IDS Prop. Cas. Ins. Co.*, 2013 WI 29, ¶48, 346 Wis. 2d 450, 828 N.W.2d 812.

American Family presents a compelling argument: a payment "for your life," as the agreement explicitly denotes in Section 6.q, "is made only for an agent's life." (ECF No. 15 at 18.) But "contractual provisions must be interpreted within the context of the contract as a whole; provisions that are unambiguous standing alone may be ambiguous in the context of the whole contract." *MS Real Estate Holdings,* 2015 WI 49, ¶43. When considering the termination agreement as a whole, the interplay of other relevant provisions creates an ambiguity that weighs in favor of a finding for the plaintiffs.

For one, the language of Section 6.s is not dispositive. American Family argues that Section 6.s makes clear the amount owed to beneficiaries—it provides that upon the agent's death, the legal representative will receive "the present value of any unpaid difference" of the "the amount of extended earnings calculated under Sections 6.m and 6.n." (ECF No. 1-2 at 31.) But while Sections 6.m and 6.n appear to calculate the amount of extended earnings, Sections 6.p and 6.q govern the manner and duration of payment, including payments continuing for the agent's lifetime. (ECF No. 1-2 at 30-31.) As it stands, Section 6.s does not expressly exclude the extended earnings payments "121 months and for your life thereafter" from the present value calculation. The court would need to infer limiting language that does not appear in the text of the agreement. At the Rule 12(b)(6) stage, that would be inappropriate.

*See, e.g., Levy v. Levy,* 130 Wis. 2d 523, 533, 388 N.W.2d 170 (1986) (explaining that the court "cannot insert what has been omitted or rewrite a contract made by the parties").

The inclusion of Endorsement No. 6 creates further ambiguity. Even if Section 6.s prescribed an unambiguous way to calculate the extended earnings amount, Endorsement No. 6 separately assigns "any remaining termination benefits" to the designated beneficiary. Relevant here, Endorsement No. 6 goes no further to define or limit what those remaining termination benefits encompass. Notable to plaintiffs' argument, the language neither references the calculation prescribed in Section 6.s nor does it impose a ten-year cap. Further, Wisconsin law disfavors interpretations that render provisions surplusage. *See, e.g., HCW LLC v. Alorica Customer Care Inc.*, No. 20-C-1141, 2022 U.S. Dist. LEXIS 123576, at *11 (E.D. Wis. July 13, 2022) ("In interpreting an ambiguous contract provision, a court must select the construction that gives effect to each part of the contract and reject constructions resulting in surplusage…"). If the endorsement merely substitutes a designated beneficiary for the agent's legal representative under Section 6.s, it is not apparent why the amendment was necessary.

American Family's interpretation may reflect the better reading of the termination agreement, but adopting it requires the court to resolve competing reasonable interpretations and draw inferences in American Family's favor. To do so would be inappropriate at the pleading stage. At this point, plaintiffs have pled a

plausible interpretation that would leave American Family in breach of the termination agreement.

### b. Breach of Fiduciary Duty

American Family's initial defense is derivative of its earlier argument—absent a breach of contract, there can be no breach of fiduciary duty. But because plaintiffs have plausibly alleged a breach of contract claim, the court will turn to American Family's second argument: American Family's insurance agents were independent contractors, and thus no fiduciary duty exists as a matter of law. (ECF No. 15 at 23-24.)

In Wisconsin, a breach of fiduciary duty claim requires: (1) the existence of a fiduciary duty from the defendant to the plaintiff; (2) breach of that duty; and (3) damages caused by the breach. *Berner Cheese Corp. v. Krug*, 2008 WI 95, 312 Wis. 2d 251, 752 N.W.2d 800, 809 (Wis. 2008). "A fiduciary relationship arises from a formal commitment to act for the benefit of another … or from special circumstances from which the law will assume an obligation to act for another's benefit." *Doe 67C v. Archdiocese of Milwaukee*, 700 N.W.2d 180, ¶ 55, 2005 WI 123, 284 Wis. 2d 307 (Wis. 2005) (citation omitted).

"In determining whether a fiduciary relationship has arisen, courts consider a variety of factors, including whether there is dependence and inequality based on weakness of age or mental strength, lack of business intelligence, inferior knowledge of facts involved, or other conditions giving one side an advantage over the other." *Doe 67C*, 700 N.W.2d 180, ¶ 55 (citation omitted). Central to the fiduciary

relationship is a substantial degree of trust and authority exercised by the fiduciary over the affairs of the other party. *Dusterhoft v. Onetouchpoint Corp.*, No. 22-cv-0882-bhl, 2024 U.S. Dist. LEXIS 170993, at *46 (E.D. Wis. Sep. 23, 2024).

Dismissal of the claim would be premature at this stage. Plaintiffs argue that the "functional reality" of how the termination benefits are promised, calculated, and distributed establish a fiduciary duty. (ECF No. 16 at 22.) Supporting these allegations is American Family's exclusive control over the calculations, as well as a complete lack of transparency concerning the methodology. (*See* ECF No. 16 at 23 ("when Plaintiff Princeton asked for the calculation breakdown, American Family told her 'there is no breakdown.'").) Considering the "authority exercised," *Dusterhoft* 2024 U.S. Dist. LEXIS 170993, at *46, and "the conditions giving one side an advantage over the other," *Doe 67C*, 700 N.W.2d 180, ¶ 55, plaintiffs' allegations support a plausible inference that the relationship could give rise to fiduciary duties under Wisconsin law. Whether that rises to an actual fiduciary relationship is a fact intensive inquiry that cannot be resolved on a motion to dismiss.

### c. Breach of Good Faith and Fair Dealing

Defendants argue there was no breach of good faith and fair dealing because they complied with the express terms in the contract—American Family paid Princeton the present value of termination benefits that would have been paid out to Stone over a ten-year period. (ECF No. 15 at 29-30.) Plaintiffs, in turn, assert the opposite—American Family breached their duty by not properly calculating the

present value of the lifetime annuity and thus not paying "any remaining termination benefits" as required by Endorsement No. 6. (ECF No. 16 at 6.)

Wisconsin law requires parties to comply with both the letter and the spirit of a contract. *See Betco Corp. v. Peacock*, 876 F.3d 306, 310 (7th Cir. 2017). Every contract contains the implied duty of good faith and fair dealing that "accompanies not just what the contract says but also what the parties expected to occur." *Id.* (citing Wis. JI-Civil 3044); *Foseid v. State Bank*, 197 Wis. 2d 772, 796-97, 541 N.W.2d 203, 213 (Ct. App. 1995). In assessing "what the parties expected to occur," *Betco Corp.*, 876 F.3d at 310, plaintiffs have alleged a plausible good faith and fair dealing claim at this stage.

### d. Declaratory Relief

American Family argues that the declaratory judgment claim should be dismissed because "[p]laintiffs' breach of contract claim must be dismissed." (ECF No. 17 at 19.) Because plaintiffs' breach of contract claim survives, the court declines to dismiss the derivative claim for declaratory relief at this stage.

### IV. Conclusion

There are reasons to question whether the termination agreement was intended to create a transferable lifetime annuity. But skepticism about intent does not render plaintiffs' interpretation of the agreement implausible as a matter of law. *See Olson v. Champaign County*, 784 F.3d 1093, 1099 (7th Cir. 2015) (citations omitted) ("In deciding a 12(b)(6) motion, the Court does not ask "did these things happen"; instead, "the proper question to ask is . . . 'could these things have

happened.'"); *see also Hartman v. Gilead Scis., Inc.*, 536 F.3d 1049, 1057 (9th Cir. 2008) ("the court's skepticism is best reserved for later stages of the proceedings when the plaintiff's case can be rejected on evidentiary grounds.").

Although American Family's interpretation may ultimately prevail, the court cannot conclude at this stage that the agreement unambiguously forecloses plaintiffs' reading. Plaintiffs have set forth plausible claims that would be inappropriate to dismiss at this stage. American Family raises questions better addressed at summary judgment on a more robust factual record. Accordingly,

**IT IS THEREFORE ORDERED** that defendants' joint motion to dismiss plaintiffs' complaint (ECF No. 14) is **DENIED**.

Dated at Green Bay, Wisconsin this 12th day of February, 2026.

*s/ Byron B. Conway*
BYRON B. CONWAY
U.S. District Judge
